UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BIRD,<br><br>    Plaintiff,<br><br>    v.<br><br>A. ZUNIGA, et al.,<br><br>    Defendants. | CASE NO. 1:15-cv-0910-MJS (PC)<br><br>**ORDER DISMISSING COMPLAINT**<br><br>**(ECF NO. 1)**<br><br>**AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff's complaint is before the Court for screening.

**I.    SCREENING REQUIREMENT**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.    PLEADING STANDARD**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III.  PLAINTIFF'S ALLEGATIONS

Plaintiff is housed at California State Prison ("CSP") in Corcoran, California, where the acts giving rise to this complaint occurred. He names the following as Defendants: (1) Correctional Officer ("CO") A. Zuniga; (2) CO M. Medina; (3) CO K. Buchanan; (4) Nurse Q. Uy; and (5) Nurse A. Godina.

Plaintiff's allegations may be summarized essentially as follows.

Plaintiff has a documented mental health history of post-traumatic stress disorder ("PTSD") and suicidal ideations. Each of the Defendants was aware of this history.

2

On the morning of April 16, 2014, Plaintiff became distressed when CO Zuniga denied Plaintiff access to the law library and told Plaintiff he would be moved from his current housing. After Plaintiff calmed down, he asked to have an abrasion on his face cleaned by medical staff. CO Zuniga denied this request, and told Plaintiff to return to his cell. Plaintiff became very anxious and upset as a result of CO Zuniga's behavior and sought to file a staff accountability document, but COs Zuniga and Medina refused to accept the form.

This conduct caused Plaintiff to suffer PTSD complications, including shakes, anxiety and flashbacks. He asked to be seen by a mental health official, but was denied by CO Zuniga. Plaintiff told COs Zuniga and Medina that he was a participant in the mental health program, that he suffered from PTSD, and that he needed to be evaluated by a mental health care professional. Plaintiff also told COs Zuniga, Medina and Buchanan that he "felt like hurting himself," but he was still not allowed to see a doctor. CO Zuniga said he "did not care if plaintiff wanted to kill himself," and said "if you want[ ] to see mental health, put in a sick call slip."

Sometime after 10:00 a.m., Plaintiff decided to disobey CO Zuniga's orders and attempted to walk out of the building to receive mental health care. CO Zuniga arrested Plaintiff and used excessive force while handcuffing him. When Plaintiff told CO Zuniga that he was hurting him, CO Zuniga released the pressure.

After Plaintiff's arrest, he was handcuffed and placed in a holding cell. There, Plaintiff was interviewed by Nurses Uy and Godina. Despite being aware of Plaintiff's mental health history and his statements that he felt like hurting himself, these Defendants did not refer Plaintiff to a mental health clinician.

At approximately 11:00 a.m., a sergeant removed Plaintiff's handcuffs so that Plaintiff could sign a copy of his Miranda Warning rights. This sergeant forgot to re-cuff Plaintiff. Left alone and unsupervised, Plaintiff attempted to hang himself with his shoe

strings. He awoke later in the Treatment Triage Area where he was awaiting placement in a crisis bed.

Plaintiff seeks $380,000 in damages and costs.

## IV. ANALYSIS

### A. Eighth Amendment - Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 102-04 (1975). Prisoners' mental health needs are among the medical needs covered by the Eighth Amendment. See Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994); see also Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements analyzed as part of general health care requirements), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

"In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of

4

medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974 F.2d at 1050, overruled on other grounds, WMX, 104 F.3d at 1136. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Here, Plaintiff accuses Nurses Uy and Godina of deliberate indifference when they failed to refer Plaintiff to a mental health care professional. This mere denial does not rise to the level of a constitutional violation. The facts alleged do not indicate that these Defendants knew of and disregarded an excessive risk to Plaintiff's health. As plead, Plaintiff told these Defendants of his suicidal ideations while he was handcuffed in a holding cage, circumstances unlikely to enable or allow him to injure himself. Indeed, it was not until another individual, a nonparty, removed Plaintiff's handcuffs that Plaintiff was able to attempt to hurt himself. On these facts, the Court cannot say that Plaintiff has alleged a claim of deliberate indifference against these Defendants.

### B. Eighth Amendment – Failure to Protect

Under the Eighth Amendment, "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). To establish a violation of this duty, a prisoner must demonstrate that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. This requires the prisoner to satisfy both an objective and a subjective component. First, the prisoner must demonstrate that the alleged deprivation was, in objective terms, "sufficiently serious." Id. at 834 (quoting Wilson v. Seitner, 501 U.S. 294, 298 (1991)). Second, the prisoner must demonstrate that prison officials acted with a sufficiently culpable state of mind. Prison officials must have known of and disregarded an excessive risk to the prisoner's safety. Id. at 837.

A suicide attempt is actionable only where the act of attempted suicide is non-volitional. Soto v. City of Sacramento, 567 F. Supp. 662, 69394 (E.D. Cal. 1983). Thus, Plaintiff must allege sufficient facts to demonstrate that the act of attempted suicide was not volitionally taken and was, instead, caused by the Defendants' wrongful conduct.

> That is to say, plaintiff's attempted suicide, if the result of a mental condition proximately caused by [the] defendants' violation of his constitutional rights, which condition prevents him from realizing the nature of his act or controlling his conduct, constitutes an intervening (i.e., one cause) but not superceding (i.e., sole cause) of plaintiff's injury and thus does not, as a matter of law, break the chain of proximate cause. On the other hand, if at the time of the attempted suicide plaintiff was able to appreciate the nature of his act and able to control his conduct, but chose freely to attempt suicide, defendants would not be liable for the injuries sustained by virtue of the attempted suicide.

Soto, at 693-94. In other words, if Plaintiff's suicide attempt was the result of Defendants' failure to provide adequate medical care and Plaintiff's mental condition prevented him from "realizing the nature of his act or controlling his conduct," then Plaintiff could, as a matter of law, demonstrate that Defendants were the proximate cause of Plaintiff's suicide attempt. Id. at 694. On the other hand, if Plaintiff was able to "appreciate the nature of his act and able to control his conduct, but chose freely to attempt suicide, [D]efendants would not be liable for the injuries sustained by virtue of the attempted suicide." Id.

In this case, Plaintiff alleges that he became distressed as a result of CO Zuniga's refusal to allow Plaintiff to access the law library and to visit medical. He then informed COs Zuniga, Medina and Buchanan of his PTSD; he told them that he wanted to kill himself; and he asked to be seen by a mental health professional. Despite knowledge of Plaintiff's mental health and suicidal ideations, none of these Defendants acted to protect Plaintiff. CO Zuniga, in fact, told Plaintiff to "just kill himself." Plaintiff, who was later placed in a holding cell, attempted suicide.

Even construing the complaint in the light most favorable to Plaintiff, the facts alleged suggest that Plaintiff's attempted suicide was volitional; they do not support a finding that the attempt was involuntarily and caused by Defendants' wrongful conduct. This claim will therefore be dismissed with leave to amend to allege facts sufficient to show that the suicide was in fact caused by Defendants rather than an election by Plaintiff simply to bring attention to his plight. Even then, the intervening act of the non-party sergeant who left Plaintiff uncuffed in the holding cage may break the chain of causation necessary to proceed against the named defendants.[1]

### C. Eighth Amendment – Excessive Use of Force

When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). In determining whether a prison official has used excessive force, "the core judicial inquiry ... is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors the court may consider in making this determination include: (1) the extent of the injury; (2) the need for force; (3) the relationship between the need and the amount of force used; (4) the threat as reasonably perceived by prison officials; and (5) any efforts made by prison officials to temper the severity of a forceful response. Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Plaintiff accuses CO Zuniga of using excessive force and injuring Plaintiff's shoulder when detaining him. Plaintiff does not describe the extent of the injury or suggest that it was more than de minimis. He also asserts that the arrest and use of force followed his willful disobedience of CO Zuniga's orders. Finally, he notes that CO

---

[1] Traditional tort analysis dictates that another defendant's actions may constitute an intervening cause of plaintiff's injury and thus break the chain of causation so as to relieve the initial actor of liability if the latter defendant's actions were unforeseeable. Courts in civil rights cases have generally followed this approach. See, e.g., Soto, 567 F. Supp. at 688.

Zuniga stopped the use of force when Plaintiff complained. Based on these facts, the Court finds that Plaintiff fails to state a claim.

## V.  **CONCLUSION AND ORDER**

Plaintiff's Complaint does not state a claim for relief. The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of his complaint, filed June 15, 2015;
2. Plaintiff's complaint (ECF No. 1) is dismissed for failure to state a claim upon which relief may be granted;
3. Plaintiff shall file an amended complaint within thirty (30) days; and
4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will dismiss this action, with prejudice, for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated: November 24, 2015         /s/ *Michael J. Seng*
                                 UNITED STATES MAGISTRATE JUDGE